## STATE v. MORRIS.

No. 2314. Decided March 8, 1912 (122 Pac. 380).

1. HOMICIDE—EVIDENCE—RES GESTAE. Where a person, after holding up a pawnshop, was pursued by several persons, fired several shots at his pursuers, and when caught by the deceased turned and shot him, evidence of the robbery, flight, and pursuit were admissible as illustrating and characterizing the act of the defendant in a prosecution for the homicide. (Page 434.)

2. HOMICIDE—EVIDENCE—RES GESTAE—PURPOSE OF ADMISSION. Such testimony was admissible not only to evidence the intent, but also to show the motive of the shooting. (Page 435.)

3. HOMICIDE—TRIAL—INSTRUCTIONS—LANGUAGE OF STATUTE. Where a court in its charge defined first degree murder, in the language of the statute (Comp. Laws 1907, sec. 4161), as murder perpetrated in one of several ways, though the allegation of the information alleged and the state's proof tended to prove that the defendant willfully, maliciously, etc., shot and killed the deceased, the instruction was proper, as the different kinds of first degree murder enumerated were so connectedly set forth as to render it difficult to state one in the language of the statute without stating the others. (Page 437.)

4. CRIMINAL LAW—TRIAL—INSTRUCTIONS—CHARGE AS A WHOLE. A charge as to murder in the first degree in the language of the statute was not erroneous, where the court also told the jury that the defendant could not be convicted for the commission of all or any of the "unlawful acts immediately prior or subsequent to the killing" of the deceased; that, "in this case, the state does not rely for a conviction on the theory that the homicide charged in the information was committed in the perpetration of or attempt to perpetrate a burglary or robbery;" that a finding of the previous commission of a rob-

bery or burglary would not change the degree of murder or manslaughter; and also charged a conviction only on the ground that the jury found beyond a reasonable doubt that the killing was unlawful, willful, deliberate, and premeditated with malice aforethought, and with a specific intent to take the life of the deceased, clearly defining the terms used. (Page 437.)

5. CRIMINAL LAW—TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES —PROVINCE OF JURY—"LIBERTY." An instruction that the jury, if they believed "any witness had willfully testified falsely as to any material fact in the case," were "at liberty to disregard the whole of the testimony of such witness, except as he may have been corroborated by credible witnesses or credible evidence," was not improper as requiring the jury to reject or accept any portion of the testimony of such a witness, as the word "liberty," as used in the charge, implies freedom and choice. (Page 438.)

6. CRIMINAL LAW—TRIAL — INSTRUCTIONS — CREDIBILITY OF WITNESSES. The instruction on the credibility of witnesses was not improper as implying that, if a witness were corroborated, the jury could not reject all or a part of his testimony, where in other portions of the charge the court expressly told the jury that they were the "sole judges of the weight of the evidence, the credibility of the witnesses, and of the facts;" that they were "not bound to believe all that the witnesses may have testified to, nor are you bound to believe any witness;" that "you may believe one witness as against many, or many as against one;" that it was their duty to reconcile conflicts in testimony; and properly instructed them on the proving power and the credibility to be given the testimony of the defendant. (Page 438.)

7. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR. The giving of an instruction on the credibility of witnesses was harmless, where the defendant was the only witness in his own behalf, and the only material point in controversy was as to whether the shooting was intentional or accidental, as the verdict of the jury could not have been reached under a belief that a witness for the state willfully testified falsely to a material fact not in dispute. (Page 441.)

8. HOMICIDE—IMPOSITION OF PENALTY—DISCRETION OF JURY. Under the statute which gives a jury rendering a verdict of first degree murder discretion to make a recommendation that the defendant be imprisoned for life and vesting in the court the right to use its discretion in acting thereon with no alternative but to impose the death penalty, where no recommendation is made, where the court, in a prosecution for a homicide, advised the jury that the making or withholding of the rec-

ommendation was entirely within their discretion, and gave them no intimation or direction as to what should control or influence in reaching a conclusion, the imposition of the death penalty upon a verdict of murder in the first degree without a recommendation was proper.[1] (Page 442.)

9. HOMICIDE—EVIDENCE. Evidence, in a prosecution for homicide, *held* to sustain a conviction for murder in the first degree. (Page 442.)

APPEAL from District Court, Third District; *Hon. Frederick Loofbourow,* Judge.

J. J. Morris was convicted of murder in the first degree and appeals.

AFFIRMED.

*C. A. Badger* and *D. Alexander* for appellant.

*A. R. Barnes,* Attorney-General, *E. V. Higgins* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

STRAUP, J.

The defendant was charged with, and convicted of, first degree murder, and was sentenced to suffer death. He appeals. The questions presented for review relate to admission of testimony and to the charge.

The evidence on the part of the state shows that the defendant and another, between five and six o'clock on the afternoon of May 9, 1911, at Salt Lake City, entered a pawnshop on First South Street near Commercial Street, and, with loaded guns, commanded and compelled the persons in the shop to "hold up their hands." Such other kept them covered with his gun while the defendant took from the shop or store seventy-two dollars, thirty-two diamonds, and some watches. They then left the shop and ran south on Commercial Street to Orpheum Alley, then to State Street, and then south to Second South Street. There the

---

[1] State v. Thorne, 39 Utah, 208, 117 Pac. 58.
40 Utah 28

defendant ran west on Second South Street to Commercial Street and then diagonally across Second South Street to the sidewalk, where the deceased was killed, about a block from the place of the robbery. When they left the pawn-shop, they were pursued by one or more persons from the shop calling: "Police! Robbers! Stop them!" At or near State Street and Orpheum Alley, the defendant shot at or in the direction of one of the persons so pursuing him, and then ran down the street with a gun in his hand, and calling to those in pursuit to: "Stop! Stay back!" A number of persons, twenty or more, joined in the chase, calling out: "There is the other! Stop him! Catch him!" The deceased, who was on the platform of a street car on Second South Street near the place of the homicide, stated as he left the car, "I'll get him," and ran to the sidewalk. There he seized the defendant by the arm or shoulder. The defendant turned and said to him, "Stop! You son of a bitch!" shoved him back with one hand, and with the other shot and instantly killed him. Another immediately seized the defendant by the coat. The defendant shot and wounded him, and then ran a few rods farther, when he was seized by a deputy sheriff. He also shot at the deputy; the bullet passing through the deputy's clothes. There he was over-powered by the deputy and arrested. The defendant testified that in his attempt to release himself from the deceased's grasp his gun was accidentally discharged, and that he remembered nothing more until after his arrest and on his way to the police station.

The defendant complains of the ruling admitting the evidence of the robbery, the defendant's flight, and his pursuit. It is contended these things constituted parts of a transaction separate and distinct from that on trial. We think not. They were parts of one continuous transaction, and were connected with and were a part of the main fact under investigation, and tended to illustrate and characterize it. They characterized and explained the act of the deceased seizing the defendant, and the object, purpose, motive, and intent of the shooting.

The robbery, the flight, the pursuit, the seizure, the shooting, were as nearly contemporaneous as things could well be. The deceased's seizing the defendant and the defendant's shooting him were prompted and induced under the immediate influences of the robbery, the flight, and the pursuit. They were the product, the outgrowth, of the immediate and present influences of the robbery, the flight, and pursuit. The seizure and the shooting, of course, could have been shown without proof of the preceding circumstances; but the inducement and the cause of the seizure and the shooting could not completely nor fairly have been explained or characterized, or understood, without the proof of the immediate and preceding circumstances which · influenced, prompted, and induced them. We therefore think the facts and circumstances preceding the shooting were properly received under the *res gestae* rule. (29 Cyc. 924; Wharton, Crim. Ev. 262; 1 Bishop, New Crim. Proc., sec. 425.)

Among other instructions, the court charged the jury:

"The court instructs you that the defendant is here charged with the murder of Joseph Walter Axtell (the deceased). He is not charged with, and cannot in this case be convicted of, an assault upon any person other than the said Joseph Walter Axtell, nor of robbery or buglary, no matter how closely the evidence may show such transactions to have been connected with the killing of Joseph Walter Axtell. Nor can you convict the defendant in this case because the evidence shows, if you find that it does show, that the defendant was guilty of unlawful acts immediately prior or subsequent to the killing of Joseph Walter Axtell. Evidence of the occurrence at the Uncle Sam pawnshop, and of the assaults upon persons other than Joseph Walter Axtell, was admitted solely for the purpose of shedding some light upon the intent or lack of intent in the mind of the defendant at the time the shot that killed Joseph Walter Axtell was fired; and such evidence should be considered by you for such purpose only."

The complaint made of this is that the evidence of the circumstances preceding the shooting, if admissible for any

purpose, was admissible only to show "motive," but not "intent." It is argued that in law there is a clear distinction between motive and intent. That "motive" is the moving power which impels to action for a definite result, and "intent," the purpose to use a particular means to effect such result; and that an intent may exist where motive is wanting. Then it is urged that, to render a prior or subsequent act admissible to evidence the intent accompanying the act charged, such prior or subsequent act must be similar to the act charged; and as the act of robbery is dissimilar to the charged act, the court erred in directing the jury that the acts and circumstances preceding the killing could be considered to show intent. This is predicated on the theory that such preceding acts were separate and distinct from the charged act; that they were no part of it, and not connected with it. But, as we have already shown, they were a part of the transaction in which occurred the acts of the deceased's taking hold of the defendant, or his attempt to do so, and of the shooting; hence we are not called upon to say under what circumstances acts separate and distinct from that charged may be received to evidence intent, or motive. The preceding acts here being a part of one continuous transaction, and admissible under the *res gestae* rule, the jury had the right to consider them not only to evidence intent, but also motive, and to explain, illustrate, and characterize the act of the deceased in seizing, or attempting to seize, the defendant, and the shooting of the deceased by the defendant. The charge too much restricted the consideration of the evidence, not unfavorable to the defendant, but to the state.

The court in its charge defined "first degree murder," in the language of the statute (Comp. Laws 1907, sec. 4161), that:

"Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully

and maliciously to effect the death of a human    **3, 4**
being other than him who is killed; or perpetrated
by any act greatly dangerous to the lives of others and
evidencing a depraved mind, regardless of human life, is
murder in the first degree. Any other homicide committed
under such circumstances as would have constituted murder
at common law is murder in the second degree."

The criticism made of this is that since the state alleged
that the defendant willfully, maliciously, feloniously, de-
liberately, premeditatedly, and of his malice aforethought,
and with the specific intent to take the life of the deceased,
shot and killed him, and by its evidence sought to prove a
murder committed by such means and in such manner, and
not otherwise, the court in its charge ought to have defined
and stated to the jury only the essentials of a first degree mur-
der; perpetrated in the manner alleged; and that it was prej-
udicial to the rights of the accused to state to them, in the
language of the statute, a murder perpetrated by poison, or
committed in the perpetration of, or an attempt to perpetrate,
arson, burglary, or robbery. Of course, the state did not claim
that the murder was perpetrated by poison, or committed in
the perpetration of, or in the attempt to perpetrate, arson,
rape, burglary, or robbery. The state, by its information, and
by its evidence claimed that the defendant committed murder
in the first degree, by willfully and deliberately, etc., shoot-
ing, and killing the deceased; and had the court stated and
defined to the jury the kind of first degree murder as al-
leged, without stating to them that a murder perpetrated
by poison, or committed in the perpetration of, or an at-
tempt to perpetrate, one or more of the felonies enumerated
in the statute, also was first degree murder, that would have
been all that was necessary. But the different kinds of
first degree murder enumerated in the statute are there
so connectedly set forth that it is difficult to state the one in
the language of the statute without also stating the others.
We see no error in this regard, and, in any event, we do
not see wherein the defendant was prejudiced. The court
in unmistakable terms told the jury that he could not be

convicted for the commission of any of the "unlawful acts immediately prior or subsequent to the killing" of the deceased, and further charged them that "in this case the state does not rely for a conviction upon the theory that the homicide charged in the information was committed in the perpetration of, or attempt to perpetrate, a burglary or robbery, and that you cannot find the defendant guilty of any degree of murder or manslaughter by reason of the fact, if you should so find from the evidence, that he had just previously engaged in the commission of a burglary or robbery. In this case, in order to convict the defendant of any degree of murder or manslaughter, you must find, from the evidence in the case, proof beyond a reasonable doubt of the existence of each element of such crime as enumerated in instructions numbered 4, 6, 9, and 10"—in which instructions the court specifically and in detail charged the jury that to convict the defendant they were required to find, beyond a reasonable doubt, that the killing was unlawful, willful, deliberate, premeditated, with malice aforethought, and with the specific intent to take the life of the deceased, and clearly defined and explained to them what was meant by these terms, and what was necessary for them to find in that particular to find the defendant guilty.

The court also charged the jury that, "if you shall believe any witness had willfully testified falsely as to any material fact in the case, you are at liberty to disregard the whole of the testimony of such witness, except as he may have been corroborated by the credible witnesses or credible evidence in the case." Complaint is made of this charge. Such a charge has frequently been given and approved. (1 Brickwood's Sackett Insts., sec. 346; Hughes, Instructions, sec. 218; 12 Cyc. 608.) It has been criticised or questioned by Blashfield in his work on Instructions, section 256. He, however, concedes that the cases disapproving such a charge are in the minority. The criticism here made of the charge is that the court ought to have told the jury that, if a witness willfully testified falsely as to any material fact, then they were at liberty to reject the

whole of the testimony of such witness, or to give such weight to it as they thought it was entitled to; and that the charge was especially rendered erroneous by the addition of the words "except corroborated by other credible witnesses or evidence." In support of these contentions, it is argued that the charge did not permit the jury to accept the whole or a part of the testimony of such a witness, if uncorroborated, or, though corroborated, to reject the whole or a part of it. The charge did not require the jury to reject or accept any portion of the testimony of such a witness. The charge that the jury were at liberty to disregard necessarily implies that they were at liberty to accept, that they were free to accept or reject as they saw fit. The word "liberty," as used in the charge, is not one of requirement or behest, but of freedom and choice. But it is especially urged that, because of the additional words "except corroborated by credible witnesses or evidence," the jury were not permitted to reject the whole or a part of the testimony of such a witness, if he was corroborated, and thereby the court invaded the province of the jury. This is the criticism made of such a charge by Mr. Blashfield. We think it is refined and abstruse, rather than substantial and fundamental. It is looking at the recondite rather than the readily observed or ordinarily perceived sense. In determining the meaning of language, we often regard the essentials sought and intended to be conveyed and understood by the language employed rather than the mere exactness of expression. The essentials here involved are that the jury are the sole judges of the credibility of the witnesses, the weight of their tesimony, that they should be so instructed, and that the court must not invade their province in that regard. Now, in what respect were these essentials not properly stated, or was such province invaded? As already observed, the court did not require the jury to reject or accept the whole or any part of the testimony of any witness whom they believed had willfully testified falsely to any material fact. Did they understand that if such a witness were corroborated they could not reject the

whole or a part of his testimony? In determining that, we must look to all that the court said respecting the credibility of the witnesses and the weight of their testimony. In other portions of the charge the court expressly told the jury that they were the "sole judges of the weight of the evidence, the credibility of the witnesses, and of the facts"; that they were "not bound to believe all that the witnesses may have testified to, nor are you bound to believe any witness"; that "you may believe one witness as against many, or many witnesses as against one"; that if there was a conflict in the testimony of the witnesses it was their duty to reconcile it so far as they could; that it was for them "to determine for yourselves where the ultimate truth of the case is," and "it is solely and expressly for you, as jurors, to find and determine the facts"; that "you should give the testimony of the defendant the same fair and impartial consideration as you would give to the testimony of any other person on the witness stand"; and that his testimony, "even though uncorroborated, is to be considered in the light of its inherent proving power." So, from the whole charge bearing upon the question in hand, we think it is clear that the jury were given to understand that they were the sole judges of the credibility of the witnesses and of the weight of the testimony, and of the facts, and that in determining them they were at liberty to give such credit to the witnesses and weight to the testimony as they thought they were entitled to, and that in so doing they could believe or disbelieve, accept or reject, the whole or a part of the testimony of any witness.

Moreover, the defendant was the only witness in his behalf. The general alleged objectionable charge could not have influenced the jury to his prejudice, in considering his testimony, for the court specifically charged them to consider it, though uncorroborated. Could it have so influenced the jury in considering the testimony of one or more of the witnesses for the state? It is said that the jury may have believed that one or more of such witnesses may have testified falsely as to some material fact, yet, because of the

charge, they were not at liberty to reject the whole or a part of such testimony if corroborated. The only material fact testified to by the defendant was the accidental discharge of the gun. The evidence of all other material facts was without conflict. The testimony of the defendant as to an accidental shooting of the deceased was disputed by a number of witnesses. It is inconsistent with the undisputed facts that, just before the deceased was shot, the defendant shot at or towards one or more persons pursuing him, and immediately after the deceased was shot he shot and wounded another, and shot at the officer arresting him, and is at war with all other facts and circumstances attending the shooting of the deceased. The jury, of course, found that such shooting was not accidental, but intentional. We cannot see in what way the general alleged objectionable charge could have influenced them in reaching such a conclusion. Upon the record, it is as evident as anything can be that they did not arrive at such a conclusion, because they may have believed that a witness for the state willfully testified falsely to some material fact not in dispute, but, because he may have been corroborated as to such fact, the jury felt constrained to accept his testimony as to an intentional shooting and not an accidental shooting of the deceased by the defendant, the only material fact which was in dispute, and for that reason found that the shooting was intentional and not accidental. The statement of the proposition, if not self-destructive of the claim, places it in the category of sheer conjecture and speculation. To say that the jury, for such a reason, could, and consequently may, have reached such a conclusion, is, upon this record, not only greatly improbable, but almost inconceivable.

In finding and rendering a verdict of first degree murder, our statute gives the jury a discretion to make a recommendation that the defendant be imprisoned for life. If such a recommendation is made, the court has the discretion to impose the death penalty or such an imprisonment. If no such recommendation is made, the court must impose

the death penalty. No such recommendation was made, and hence the death penalty was imposed. The defendant complains that the court in its charge did not sufficiently and properly direct the jury as to their power and province in the making or withholding of such a recommendation. In the case of *State v. Thorne,* 39 Utah, 208, 117 Pac. 58, we stated what the duty of the court is in such particular. We there said that the making or withholding of the recommendation by the jury was a matter entirely within their discretion, and that the court could not direct, control, or influence them in reaching a conclusion upon it, and held that the court in its charge there had undertaken to guide and direct them in the determination of the question. But here the court advised the jury to the effect that the making or withholding of the recommendation was a matter entirely within their discretion, and left them free to dispose of it without any intimation or direction as to what should control or influence them in reaching a conclusion upon it, and gave a charge which is in harmony with the views expressed by us in the Thorne Case in respect of the duty of the trial court in such particular. This complaint is therefore without merit.

We have examined the whole charge with care. We fail to find it erroneous against, or prejudicial to, the defendant in any particular. In some respects it is more favorable to him than the state, and if any error was committed it is against the state, not the defendant.

No complaint is made of a want of evidence to sustain the verdict. No such complaint can successfully be made, for the evidence clearly shows the defendant's guilt of the charged offense. He was ably represented by counsel, and his rights in every particular were guarded and protected. We do not see what could have been reasonably urged against the charge or the judgment, or what could properly have been done in the defendant's behalf, which was not urged or done by his counsel. His trial was fair and impartial. The record of his conviction is free of error against him. Of that we are well satisfied.

We therefore think that the judgment of the court below ought to be affirmed. It is so ordered.

FRICK, C. J., and McCARTY, J., concur.